C. E. Hellberg et al., Appellants, v. Gustave P. Warner et al., Appellees.

Gen. No. 42,486.

Opinion filed March 2, 1943. Rehearing denied June 4, 1943.

John C. DeWolfe, of Chicago, for appellants.

Louis A. Rosenthal, of Chicago, for appellees.

Mr. Justice Scanlan delivered the opinion of the court.

This is an interlocutory appeal by plaintiffs from an order entered staying all proceedings in the above cause during the military service of Franz L. Warner, and until sixty days thereafter under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940. Plaintiffs (respondents) appeal.

Defendants filed the following verified petition in the aforesaid cause:

"The Petitioner, Gustave P. Warner, as the duly authorized agent of Franz L. Warner and for and on his behalf, and on behalf of Patrick L. Warner and himself, as Defendants, represents . . . :

"1. That this action for $10,000.00 is based on a claim of purported super-added liability of Mrs. Hildur Lindstrand Warner as holder and owner of one hundred shares of stock in the Union Bank of Chicago, a defunct bank, and the fact that the Defendants were the devisees of certain property of said Mrs. Warner.

"2. That in June, 1932, a complaint was filed in the Superior Court of Cook County to enforce stockholders' liability against the stockholders of the Union Bank of Chicago, amongst whom was Mrs. Warner, holder of one hundred shares. Mrs. Warner died in 1936, while said cause was pending. In November, 1936, the estate of said Mrs. Warner was opened [in the Probate court], an inventory filed and approved, listing the said one hundred shares she held at no value, and listing as assets mainly real estate. The Defendants were devisees under the will of Mrs. Warner of her said estate, which was closed in November, 1940. No claim was filed by the creditors of the Union Bank of Chicago or the Plaintiffs in this action in said

estate, though proper publication for claims was duly made by the administrator. In June, 1940, a decree was entered in the stockholders' liability suit and said decree included Mrs. Warner. In March, 1941, the said stockholders' liability decree was amended, striking Mrs. Warner's name out of the decree and joining the Defendants herein in that action . . . . In July, 1941, Defendants herein were dismissed from said action . . . without prejudice. The present action was filed July, 1941.

"3. That the action in the above entitled cause is for $10,000.00 and based on the claim of purported super-added liability of Mrs. Warner for holding one hundred shares of stock in the Union Bank of Chicago, a defunct bank, and the fact that the Defendants, including Franz L. Warner, were devisees of certain property of the deceased; that the present action is based upon certain sections of the Statute of Frauds in conjunction with the claim of super-added liability of Mrs. Warner.

"4. That the above cause was referred to a Master in Chancery; that a number of hearings have been had before said Master . . . but have not been concluded.

"5. That Franz L. Warner has been inducted into the armed services of the United States of America and he is presently a person in military service in the Navy of the United States of America.

"6. That the object of the Plaintiffs in this cause is to secure a personal decree against the Defendants, including Franz L. Warner, for $10,000.00 and to reach by levy or otherwise certain real estate and the rents, issues, and profits thereof, devised to the Defendants under the last will and testament of said Mrs. Warner.

"7. That the conduct of the defense by the Defendants, and especially the Defendant Franz L. Warner, will be and is materially affected by reason of his

said induction into military service for the reasons that he will be and is unable to appear and testify in this cause in connection with an accounting for rents, issues and profits of the said properties, and to show that he has changed his position together with the other Defendants by incurring obligations in connection with said property inherited; that one of the defenses to the Complaint herein is a denial of profits out of rents since the Defendants have operated the properties which have descended to them as aforesaid, and another defense is one of laches by reason of failure by the Plaintiffs or the creditors of the Union Bank of Chicago to file suit in apt time, as a result of which Defendants have changed their position by virtue of making themselves personally liable on mortgages of the property and in other ways.''

Petitioner prays in behalf of said Franz L. Warner and all the defendants that pursuant to the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, the above action be stayed during the period of the military service of Franz L. Warner and until sixty days thereafter; and that the plaintiffs be enjoined and restrained from proceeding in any way in the above entitled cause until further order of the court.

Respondents filed a verified answer to the petition, in which they admit the nature of the action against the petitioners, the death of the ancestor, the provisions of the will of the deceased, and that the personal property of the deceased was insufficient to pay her debts; that the deceased left two parcels of real estate that came into defendants' possession on her death; that respondents' claim is based upon section 10 of the Frauds and Perjury Act; that the will of the deceased was fraudulent and void as to plaintiffs' demands and that the personal estate being insufficient to pay her debts defendants, as her legatees, are liable under sec-

tion 12 of the Act to the full amount of the parcels of real estate and for rents and profits on the same; that respondents believe that petitioners have purposely delayed and hindered the proceedings before the master until petitioner Franz L. Warner was actually inducted into the military service in order that they might have an excuse for a continuance; that petitioners might easily have presented their evidence before the master many months before the filing of the petition; that the conduct of the defense would not be materially affected by the induction of Franz L. Warner into military service; that respondents offered to stipulate that if he were to appear before the master he would testify to any material facts that he would state in an affidavit; that the interest of Franz L. Warner will be fully protected by the attorney and the other two petitioners and that the cause should not be delayed as to Franz L. Warner because of his induction into military service; that the case should not be delayed as to Gustave P. Warner and Patrick L. Warner, who are not in military service.

Petitioners filed a verified reply to the answer, in which they deny that they have been guilty of dilatory tactics in the hearing before the master and state "that Franz L. Warner, the defendant who is now in military service, prepared the accounting of rents and profits of the buildings herein involved, has personal knowledge of many of the items in dispute, and is qualified to testify thereto, and would have adduced testimony thereto had he not been called into the military service"; further state that the action of plaintiffs against defendants under the law is a joint action and not joint and several; that plaintiffs cannot be harmed by any stay of proceedings because the action is *lis pendens* as to the real estate involved and defendants could not sell the same except subject to the purported claims of plaintiffs.

In passing upon the motion to stay proceedings the trial judge heard evidence and the arguments of counsel before entering the stay order.

The following facts are undisputed: On June 27, 1932, a stockholders' liability suit was filed in the Superior court of Cook county. Hildur Lindstrand Warner was made a defendant and filed her answer to the complaint. While the case was pending before a master in chancery she died, on November 10, 1936. Her estate was probated in the Probate court of Cook county and letters testamentary were issued to Gustave P. Warner, her husband, on November 16, 1936. The estate consisted of personal property of the value of $766.70 and three parcels of real estate. Mrs. Warner left her surviving her husband and Patrick L. Warner and Franz L. Warner, her sons. The will provided that after the payment of debts, her estate was to be divided equally between her husband and the two sons. The plaintiffs in the stockholders' liability suit did not file a claim against the estate of Mrs. Warner "though proper publication for claims was duly made by the administrator." After the death of Mrs. Warner the master filed a report in the Superior court proceeding recommending a decree against her for $10,000, and on June 28, 1940, a decree was entered against her and others. Subsequently the decree as to her was vacated, the plaintiffs claiming that they were not aware at the time the decree was entered that Mrs. Warner was dead. The three defendants in the instant cause were then made parties to the stockholders' liability suit, but in July, 1941, the suit was dismissed as to them. On July 23, 1941, the instant complaint was filed and "Gustave P. Warner, Franz L. Warner, and Patrick L. Warner, as heirs at law of Hildur Lindstrand Warner, deceased, and as legatees under her last will and testament," were made parties defendant. When the order ap-

pealed from was entered litigation to enforce alleged stockholder's liability of Mrs. Warner had been pending in the courts of Cook county against Mrs. Warner or her heirs at law for over ten years.

Section 100 of the Soldiers' and Sailors' Civil Relief Act of 1940 provides as follows:

"In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force."

Section 201 of that Act provides as follows:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

The Soldiers' and Sailors' Civil Relief Act of 1940 is substantially a reenactment of the 1918 Act of the same name, and if it were necessary many cases might be cited wherein the rule is announced that such Acts must be liberally construed in favor  of the rights of

men engaged in military service, but respondents concede, as they must, that such is the rule.

Respondents contend that "The order staying the proceedings in the case as to defendant, Franz L. Warner, was an abuse of judicial discretion"; that "it is not to be denied that the Act as a whole, should be liberally construed in favor of the person in military service, as stated in *Clark v. Mechanics American National Bank,* 282 Fed. 589, but on the other hand, the granting of relief under the Act is not mandatory, and the courts may deny relief in cases where the rights of litigants not in service may be so unduly prejudiced, as in the instant case, as to outweigh the benefits which might accrue in favor of one in service." Both parties state that there are no Illinois decisions that pass upon the Act.

The opinion in the recent case of *Bowsman v. Peterson,* 45 F. Supp. 741, wherein the defendant sought a stay of proceedings under the Act of 1940, is instructive. To quote from it (pp. 742, 743, 744):

"Counsel for the parties have submitted the issue to the court by oral argument. Without neglecting the possibility that recourse to the indulgence of the act may be available, and actually had, in many instances where the legitimate protection of the person in the country's service is more apparent than real, the court is convinced that the stay must be allowed; and the motion is, therefore, being sustained.

". . .

"In this instance, the inevitability of absence must be affirmed upon the premise of the national emergency, irrespective of the basis of the defendant's induction into the military service. The necessity of the presence of a party at the trial of a civil action for damages against him is admittedly not absolute, but it is at least reasonable. Within due limitations, he ought to be allowed to testify personally before the

jury rather than through the notoriously indifferent medium of deposition. He should be allowed to scrutinize the jury list, to confront the jury as it is empanelled to observe the responses of its members on the voir dire examination, to make suggestions and have them and his preferences and his possible relation to the jurymen considered, in the very important step of peremptory challenges. He should, if reasonably possible, have the opportunity to be personally before the court and the jury during the entire progress of his trial, manifesting his interest in its event and allowing those charged with the burden of decision to observe him, either for his advantage or to his possible detriment. The good faith of the present application is not seriously in question. As to the defendant's probable attendance upon trial 'at some reasonable future time,' the court, in the current circumstances, will abstain from clairvoyance; but will give the applicant the full benefit of any uncertainty upon the point.

"So, even in the absence of a controlling statute, the court would be disposed to grant some indefinite and discretionarily terminable continuance upon the defendant's request. Both upon considerations of general judicial discretion and on the basis of precedent such indulgence may be supported.

"But here the statute seems to be imperatively controlling both as to the necessity for the stay, 50 U. S. C. A. Appendix Sec. 521, and for practical purposes, as to its duration, 50 U. S. C. A. Appendix Sec. 524.

"By Sec. 524, it is provided that 'Any stay of any action . . . ordered by any court under the provisions of this Act may, except as otherwise provided, be ordered for the period of military service and three months thereafter or any part of such period . . . '. It is true that the language is permissive. But it is likewise obvious that it reflects an instructive legis-

lative policy to place the person engaged in the military establishment beyond the effect of the urgencies and uncertainties of pending litigation, and to allow him a reasonable period following his discharge to reorient himself with a view to the trial of his cause. So, if a continuance is in order, there would seem to be a rather clear congressional intimation that in the ordinary case it should be granted in general terms for the duration of the applicant's service and three months thereafter.' It is presently impracticable to attempt to limit stays, except in extraordinary cases, to 'any part of such period.'

"Section 521 deals with the conditions under which a stay of proceedings will be allowed. It provides that: [Here follows section 521.]

"In this case the defendant has applied for a stay of proceedings. He has, therefore, removed the question of allowing a stay from the field of the court's discretion (if, indeed, it be considered that, circumstances suggesting a stay being available, there is ever any real discretion to deny a stay) and made the allowance of a stay mandatory, 'unless, in the opinion of the court, the ability of . . . the defendant to conduct his defense is not materially affected by reason of his military service.' That language of the Act appears to the court to impose upon the party resisting the application for stay the burden of satisfying the court of the absence of material impairment by military service of the defendant's ability to defend himself.

"No attempt has been made here towards such a showing; and the court can not readily comprehend how such attempt could ordinarily be successful, or the showing made in furtherance thereof persuasive.

"The Soldiers and Sailors Civil Relief Act of 1940 (in like manner with all similar previous acts in our history) was prompted by at least two considerations,

first, the maintenance in the armed forces of a reasonable measure of that unbothered serenity and security in respect of personal responsibilities which effectively promotes military efficiency and the national defense; and secondly, the assurance that in the field of individual justice no advantage in judicial proceedings by or against a soldier or sailor will result from his absorption in his country's defense.

"The soldier or sailor in seasons of war has neither time nor mental aptitude for litigation. Without unnecessary discussion, it may simply be stated that while the Act recognizes that in some instances 'the ability of . . . the defendant to conduct his defense is not materially affected by reason of his military service,' such instances will be relatively rare. And the court is not made aware of any circumstances upon which it may be concluded that this is one of them.

"There is nothing novel either in the legislation which the defendant now invokes, or in the policy of judicial and social indulgence towards the absent soldier. Only presumption would impel a judge, in a memorandum of this character, to assemble from legal and general literature the abundant examples of the latter grace. And as to the former, it will be sufficient merely to mention the numerous statutes enacted during the Civil War upon the point (vide: 13 C. J. 143, Title, Continuances Sec. 42(2), Note 68 and cases cited; 17 C. J. S., Continuances, Sec. 30) and the more recent Soldiers and Sailors Civil Relief Act of 1918, 50 U. S. C. A. Appendix Sec. 101, et seq., especially Secs. 112 and 115.

"It may be granted that a continuance will probably operate at least temporarily and perhaps permanently to the disadvantage of the plaintiff. That result is unfortunate. But it is a reasonable exaction by society from one of its members for its own preservation; a

proper imposition by the state upon an individual citizen in the course of its discharge of its constitutional obligation to 'provide for the common Defence.' "

In *Korsch v. Lambing,* 28 N. Y. S. (2d) 167, the defendant, in military service, sought to stay the proceedings under the Act. In passing upon his motion the court said (pp. 167, 168) :

"This motion is granted. The defendant is a necessary witness to the defense of this action. Since he is presently in military service and is stationed at Chanute Field, Ill., it seems unlikely that he can properly defend this action at this time. Under the provisions of 'The Soldiers & Sailors Civil Relief Act of 1940,' 50 U. S. C. A. Appendix Sec. 501 et seq., this court will exercise its discretion in favor of the defendant and stay all proceedings until three months after the defendant's termination of military service or until such time as his military service does not materially affect the defense of this action, at which time the plaintiff may apply to this court to vacate the stay and to proceed."

In *Clark v. Mechanics' American Nat. Bank,* 282 F. 589, the court held that where a party claiming a mechanic's lien under Crawford & Moses' Dig. Ark. Secs. 8555, 8556, requiring that suit be brought on the claim, or that the claim be filed by order of the court, with the receiver of the railroad, within one year after the claim accrued, had been in military service, under Soldiers' and Sailors' Civil Relief Act, Secs. 100, 205 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, Secs. 3078-¼a, 3078-¼e), the period of such service must be excluded in computing time for the bringing of the suit.

In *Hoffman v. Charlestown Five Cts. Sav. Bank,* 231 Mass. 324, an officer in the military service of the United States outside of the Commonwealth brought a bill to obtain relief from the foreclosure of a mortgage made in violation of the Soldiers' and Sailors'

Civil Relief Act of 1918. It was contended by the defendant that the father of the soldier was the latter's agent in care of the property in question and had full knowledge of the foreclosure sale and not only acquiesced in the foreclosure sale, but, in fact, approved of it, but the Massachusetts Supreme Court held (p. 329) that "The protection given by the act is given to the person in the military service of the United States. The right given to him is personal to him. For that reason the knowledge, acquiescence and approval of the plaintiff's agent for the care of the property is of no consequence." See, also, *Vaughn v. Charpiot,* 213 S. W. (Tex. Civ. App.) 950.

It is true that a trial court in refusing to stay the proceeding does not abuse its discretion, under the Act, if the circumstances justify the refusal. *Fennell v. Frisch's Admr.,* 192 Ky. 535, is a case in point. There Fennell, the defendant in a personal injury suit, was a captain in the ordnance department of the government and at the time of the trial was located at Cincinnati, Ohio. His official duties were such as to permit him to spend a portion of his time at his home in Newport, Kentucky, which is just across the Ohio river from Cincinnati. In private life he was a contractor for heating and ventilating equipment and at the time of the accident was on his way to his Newport office. When the case was called for trial he moved for a continuance on the ground that he was engaged in the military service of the government and that under the Soldiers' and Sailors' Civil Relief Act of 1918 he was entitled to the continuance. The trial court refused the continuance and upon appeal he raised the point that the court erred in refusing him the continuance. In passing upon the point the Supreme Court of Kentucky stated (p. 538):

"It was the evident purpose of Congress to make it discretionary with the trial judge whether, under the facts of a particular case, a stay of proceedings

should be had. Unless, therefore, the lower court abused its discretion, no relief can be accorded defendant. Had defendant been away from home in the military or naval service, and because of this fact unable to assist in the preparation of his case or to consult with his counsel, or to be present in person at the trial we would have a case different from that presented by the present record and one the like of which called for the protection of a moratorium such as provided by Congress.

"The fact that defendant was a commissioned officer in the army did not of itself compel the court to grant a continuance of the case or to suspend proceedings. We are cognizant of the fact the armistice had been signed more than a year at the time of trial. It does not appear that the purpose of the act, to-wit: the enabling of the United States to more successfully prosecute and carry on the war, was violated or frustrated in any wise; nor that defendant was prevented from devoting his entire energy to the military needs of the nation; nor that the time he found necessary to give to the case interfered in any way with his official or military duties; nor is there any showing that defendant was hindered or prevented from giving to his defense such attention and preparation as he and his counsel deemed necessary. The courts should and will protect persons engaged in the military service of the country from any loss or injury on account of their absence from the states, or their inability to properly attend to legal proceedings in which they are interested. But where, as in the instant case, the defendant resided in the county where the trial was had and probably continued to attend to his contracting business we are satisfied he was accorded full opportunity to prepare his case for trial without the least interruption to or interference with his military duties, and that the circuit judge was within his rights when he overruled the motion to postpone the trial."

To refer, briefly, to cases cited by respondents in support of their contention:

*Tulley v. Superior Court,* 113 P. (2d) 477, involved a petition for a writ of prohibition. The sole question presented was whether a nonresident officer of the armed forces of the United States who was temporarily in the State of California on official business is exempt from process in a civil action. The petitioner did not claim that the Act of 1940 exempted him from process in a civil action, but he contended that as a matter of public policy, "members of the armed forces of the United States during the present emergency should not be subject to civil process in a state where they are not residents while they are temporarily within such state in the service of their country. . . . that the courts of this state have no jurisdiction over such persons in a civil action." (p. 478) While the court held against this contention and denied a peremptory writ of prohibition, it took occasion to state that under the Act of 1940 the trial courts possessed ample powers to protect the rights of those in the military service of the United States.

In *Clarke v. Clarke,* 25 N. Y. S. (2d) 64, the wife had been awarded alimony and the husband asked "that the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U. S. C. A. Appendix, Sec. 501 et seq., be invoked during the period of his military service and asks that the order of October 1, 1940, awarding alimony, be modified." It will be noted that the soldier merely asked the court to modify the amount fixed in the alimony order. The court stated that there was insufficient data before the court to determine whether a modification of the order should be granted and decided that it would take proof as to the financial situation of the parties; that "such proof may be submitted either by affidavits or the court will take testimony thereon"; that "if defendant is away at camp, his testimony may be taken by deposition"; that "the

court will then be in a position to pass on defendant's application. In the interim the decision on the motion will be held in abeyance.''

*Tolmas, Inc. v. Streiffer,* 199 La. 26, involved an original proceeding in the Supreme Court of Louisiana for a writ of *mandamus* commanding a *nisi prius* judge to revoke his order staying relator's proceedings to evict Streiffer from premises leased to him by relator. In that case the relator had instituted proceedings by rule to evict Streiffer from certain premises and the proceedings were stayed by the trial judge under the provisions of the Soldiers' and Sailors' Civil Relief Act. In his response to the rule issued by the Louisiana Supreme Court the respondent judge stated that he had granted the stay order for the *sole reason* that he was of the opinion that an ambiguity existed in the lease and that the advice and assistance of the soldier was essential to the establishment of the true intention of the parties to the lease before it could be determined whether or not the lease had expired by reason of the alleged breaches. The Supreme Court held that it was plain that there was no ambiguity in the lease and the stay order was therefore set aside and the cause was remanded for further proceedings.

None of the cases cited by respondents supports their contention that there was an abuse of discretion by the trial judge in the instant proceeding.

Respondents contend that defendants were guilty of dilatory tactics in the proceedings before the master and for that reason the soldier is not entitled to the benefit of the Act. No authority is cited in support of this contention. Petitioners assert that they are fully warranted in charging respondents with dilatory conduct; that proceedings have been pending in the *nisi prius* courts for over ten years; that Franz L. Warner is now a soldier in the United States army and unable to attend the hearings and that the real motive of re-

spondents in fighting the stay order is to obtain an unfair advantage of the soldier. In reaching the conclusion that the instant contention is without merit we have noted, *inter alia,* that the petitioners (defendants) set up as a bar to the action alleged in the complaint the Statute of Limitations and laches.

Respondents contend that the trial court erred in staying the proceedings without imposing just terms upon defendants for the protection of plaintiffs; that section 524 of the Act provides that any stay of any action against the person in military service shall be "subject to such terms as may be just, whether as to payments in installments of such amounts at such times as the court may fix or otherwise"; that the trial court in staying the proceedings should have appointed a receiver to collect the rents on the two buildings and enjoined defendants from selling or transferring their interest in the real estate. This contention is plainly an afterthought as the record fails to show that plaintiffs requested the court to impose any "terms" on defendants or that they asked the court to appoint a receiver.

Respondents contend that "the trial court was in error in denying the admission into evidence of Plaintiffs' Exhibit 1." Respondents' counsel offered in evidence "a copy of the transcript of the proceedings before the Master, consisting of 172 pages," but made no explanation to the court as to the purpose of the offer. Counsel for petitioners objected to the admission of the transcript and the court sustained the objection, and "thereupon the said copy of transcript" was marked as Respondents' Exhibit 1. The exhibit is not contained in the transcript of the evidence and respondents' counsel concede that it was not filed in the clerk's office. From the statements of counsel we may assume that the transcript purported to give the testimony offered by plaintiffs before the master. In view of the absence of the exhibit from the record we

are not in a position to pass upon the ruling of the trial court. But respondents contend that "the trial court arbitrarily refused to incorporate in the report of trial proceedings in this case the plaintiffs' 'refused exhibit'"; that "in addition, the trial court refused to enter an order permitting the 'refused exhibit' to be filed in order that the clerk might incorporate it in the record on appeal," and that this court should order that the transcript of proceedings before the master be brought before us so that we may pass upon its·admissibility. There is nothing in the record to justify the contention of counsel that the trial court arbitrarily refused to incorporate in the report of trial proceedings the "refused exhibit" or that he refused to enter an order permitting the "refused exhibit" to be filed with the clerk.

Respondents finally contend that the order staying all proceedings in the case as to defendants not in military service was erroneous. Section 204 of the Act provides, *inter alia*: "Where the person in military service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others." Respondents' (plaintiffs') action is based upon the theory that the heirs are liable for the debts of the ancestor. In *Vanmeter v. Love*, 33 Ill. 260, the court said (p. 261): "The decree in this case, instead of being several against the defendants should have been joint for the whole debt proved to be due the heirs of Vanmeter. The liability of Love's heirs. for the debts of their ancestor, both in law and in equity, is to the extent of the full amount which came to them by descent. The decree should have been against them jointly for the whole amount, otherwise, if any one of the heirs be insolvent, the heirs of Vanmeter would lose the amount decreed against such insolvent. *Cogwell's Heirs v. Lyon*, 3 J. J. Marshall, 39." See, also, *Cutright v. Stanford*, 81 Ill. 240, 244; *Union Trust Co. v. Shoemaker*, 172 Ill. App. 365, 406,

407. Respondents cite in support of their contention *White v. Kimerer,* 200 Pac. 430. In that case plaintiffs sued the defendants to recover damages because of the death of their son. There the cause of action was joint and several. One of the defendants was in the armed service and the other defendants asked for a continuance of the cause under the Act of 1918 because of the absence of their codefendant, whereupon the plaintiffs dismissed the action *with prejudice* as against the defendant in the military service, and the court thereupon refused to continue the cause as to the other defendants. Upon appeal the Supreme Court of Oklahoma held that in the absence of proof of an abuse of discretion or a showing of prejudicial error the order of the court refusing to grant the continuance would be sustained. From an examination of the pleadings and the evidence in the instant case we think that the trial court might well have concluded that the soldier, in order to fully protect his interest in the property, should have the right to be present and take part in all of the proceedings. We feel that justice will best be served by sustaining the stay order *in toto.*

The interlocutory judgment order of the Superior court of Cook county entered August 18, 1942, is affirmed.

*Interlocutory judgment order affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.